IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00037-KDB

| | |
|---|---|
| LARRY D. CARPENTER,<br><br>**Plaintiff,**<br><br>v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>**Defendant.** | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on Plaintiff Larry D. Carpenter's Complaint (Doc. No. 1), Plaintiff's Opening Brief (Doc. No. 8), Defendant Commissioner's Brief (Doc. No. 11), and Plaintiff's Reply Brief (Doc. No. 12). Carpenter seeks judicial review of an unfavorable administrative decision denying his application for disability benefits under the Social Security Act. The Court has carefully considered this motion, the parties' briefs, the administrative record, and the applicable legal authority. For the reasons discussed below, the Court will **DENY** the motion. Accordingly, Plaintiff's judicial appeal of the Commissioner's decision is **DENIED,** and the decision is **AFFIRMED.**

I. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and

number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[1] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo, Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.

---

[1] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.* (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed.

## II. FACTS AND PROCEDURAL HISTORY

On October 27, 2020, Carpenter filed an application for a period of disability and disability insurance benefits, alleging that he had been disabled since March 24, 2020. (AR 30). His application was denied on its first review and then again upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's application in a decision dated June 15, 2022. (AR 30-43). The Appeals Council denied Carpenter's request for review and thus the ALJ's decision is the final decision of the Commissioner. (AR 16). Plaintiff timely sought judicial review of that decision under 42 U.S.C. § 405(g). (Doc. No. 1).

1. **The Commissioner's Decision**

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Carpenter was disabled under the law during the relevant period.[2] At step one, ALJ determined that Plaintiff had not engaged in substantial activity since March 24, 2020. (AR 33).

At step two, the ALJ determined that Carpenter had medically determinable impairments that significantly limit his ability to perform basic work activities. These impairments included "seizure disorder; bilateral hands osteoarthritis; bilateral Dupuytren's disease; bilateral plantar fibromatosis; and right ankle arthritis (20 CFR 404.1520(c))." (AR 33). The ALJ determined that Carpenter's other alleged severe impairments, including depression, sleep apnea, and right wrist ganglion cyst, were not supported by the evidence. *Id.*

At step three, however, the ALJ decided that Carpenter's impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The ALJ specifically found that evidence of record regarding Carpenter's seizures did not meet the evidentiary requirements of Listing 11.02 and that the evidence regarding his bilateral hand osteoarthritis, right ankle arthritis, bilateral plantar

---

[2] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but at step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

fibromatosis, and bilateral Dupuytren's contractures did not meet the evidentiary requirements of Listing 1.18 because there was no documented use of an assistive device for ambulation and a physical exam from the period at issue described the claimant "as an individual with a normal station and gait who displays intact sensation and exhibits normal strength and muscle tone". (AR 34).

Before proceeding to step four, the ALJ found that Carpenter had the following residual function capacity ("RFC"):

> to perform light exertional work as defined in the regulations with the following limitations: he is incapable of climbing ladders, ropes, and scaffolds; he is capable of frequently handling, fingering, feeling, and grasping with the bilateral hands; he is capable of occasionally operating foot controls with the bilateral feet; he is capable of no more than occasional exposure to vibrations and slippery or uneven surfaces; he is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; he is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; he is able to make occasional simple work-related decisions in a job involving only occasional changes in a routine work setting; and he is able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday.

(AR 35). The ALJ then reviewed Carpenter's medical history and found that his determinable impairments could reasonably be expected to cause the alleged symptoms, but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 36). Next, the ALJ reviewed a series of factors, including Carpenter's daily activities, symptoms, precipitating and aggravating factors, medications, treatments, other measures used to relieve pain or other symptoms, and other factors concerning Carpenter's functional limitations and restrictions due to pain or other symptoms. (AR 37-38).

Finally, the ALJ reviewed prior medical opinions and administrative medical findings, reviewing each finding before explaining how much weight the ALJ gave to each report and the reasoning for assigning such weight. (AR 38-39).

At step four, the ALJ found that Carpenter was unable to perform his past relevant work. (AR 40-41).

At step five, however, the ALJ found that there were other jobs existing in significant numbers in the national economy that Carpenter could perform based on his age, education, work experience, and RFC. (AR 41). These jobs included price marker, mailroom clerk, and cashier II. (AR 42). The ALJ therefore found that Carpenter was not disabled under the Social Security Act from March 24, 2020, through the date of the decision. (AR 43).

### III. DISCUSSION

Carpenter argues that the ALJ made two errors. First, he argues that the ALJ failed to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and his RFC finding, meaning that the ALJ's step five decision was not supported by substantial evidence. (Doc. No. 8, at 4). Second, Carpenter argues that the ALJ applied an improper legal standard when deciding Carpenter's claim. *Id.*

#### 1. **Whether a Conflict Exists Between the DOT and the RFC Finding**

Carpenter contends that the ALJ erred because (1) he did not explain how he resolved the conflict between the Vocational Expert's ("VE") testimony, the DOT's Reasoning Development Requirements, and the ALJ's RFC; and (2) he did not find that the number of price marker positions alone constituted a significant number of jobs in the national economy. (Doc. No. 8, at 13, 16).

An ALJ must identify and resolve any apparent conflicts between the VE's testimony and the DOT's reasoning development requirements for those occupations. *See Keller v. Berryhill*, 754 F. App'x 193, 198-99 (4th Cir. 2018). Even if the VE states that there are no conflicts, the ALJ "has a duty to independently identify and resolve any apparent conflicts before relying on the expert's testimony." *Lawrence v. Saul*, 941 F.3d 140, 142-43 (4th Cir. 2019). The ALJ need not address every potential conflict in detail. Although failure to make a determination on conflicts entirely means the ALJ's decision is not supported by substantial evidence, *see Boston v. Colvin*, No. 4:14-CV-206-D, 2016 WL 721563, at *9 (E.D.N.C. Feb. 2, 2016), the "ALJ does not have to state on the record every reason justifying a decision.," *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). Instead, in "accepting the VE's testimony, the ALJ [may] necessarily reject[] [the petitioner's] grievances." *Kelly v. Saul*, No. 4:18-CV-153-RJ, 2019 WL 3544071, at *5 (E.D.N.C. Aug. 1, 2019) (quoting *Brault*, 683 F.3d at 448).

"To assess whether an apparent conflict exists, we compare the DOT's 'express language' with the VE's testimony." *King v. Saul*, 787 F. App'x 170, 171 (4th Cir. 2019) (citing *Lawrence*, 941 F.3d at 143-144). In the RFC, the ALJ found that Carpenter "is able to understand, remember, and carry out simple instructions and tasks" and is limited to making "simple work-related decisions…" (AR 38). "[A] limitation to short and simple instructions appears inconsistent with jobs that require a Reasoning Development Level 3." *Keller*, 754 F. App'x at 197. Indeed, even a limitation to "simple" rather than "short and simple" instructions is inconsistent with jobs requiring Level 3 Reasoning. *Id.* at 198; *see also Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019).

Here, the ALJ, after limiting Carpenter to jobs requiring only simple instructions, determined that there were three jobs existing in sufficient numbers in the national economy that

Carpenter could do, such as price marker, mailroom clerk, and cashier II. (AR 42). The latter two, however, require Level 3 reasoning. *See* Mail Clerk DICOT 209.687-026, 1991 WL 671813; Cashier II, DICOT 211.462-010, 1991 WL 671840. Accordingly, there is an apparent conflict between the VE's testimony and the DOT "that the ALJ was obliged to resolve…" *Keller*, 754 F. App'x at 199.

At the hearing, the ALJ noted that the DOT does not address "work that requires – or involves [] only occasional changes in a simple, routine work setting" and asked the VE what the basis for her testimony was, to which she answered that her opinions were based on her training and experience. (AR 86-87). In his decision, the ALJ specifically found that the VE "reasonably accounted for any conflicts or deviances from the Dictionary of Occupational Titles resulting from the residual function capacity." (AR 42). The ALJ did not specifically identify a further conflict between simple instructions and Level 3 Reasoning, but he did not need to do so. By finding that the VE reasonably accounted for any conflicts, the ALJ necessarily resolved the conflict. *See Kelly*, 2019 WL 3544071, at *5.

Carpenter also objects that the ALJ failed to find that price markers alone constitute a significant number of jobs in the national economy. In his decision, the ALJ included a chart (AR 42), reproduced here, detailing the number of jobs available for each of the three positions identified by the VE:

| Job Title | DOT Number | Exertional Level | Skill Level and SVP | Approximate Number of Jobs Nationally |
|---|---|---|---|---|
| Price Marker | 209.587-034 | Light | Unskilled, SVP 2 | 134,000 |
| Mailroom Clerk | 209.687-026 | Light | Unskilled, SVP 2 | 11,000 |
| Cashier II | 211.462-010 | Light | Unskilled, SVP 2 | 430,000 |

The ALJ found that Carpenter "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 42). Carpenter provides no authority for the proposition that the ALJ must explicitly, and separately, find that each listed job exists in significant numbers in the national economy.[3]

---

[3] Plaintiff asks the Court to analogize his case to *Viverette v. Commissioner of Social Security*, 13 F.4th 1309 (11th Cir. 2021). In *Viverette*, Carpenter argues, the court found that the ALJ committed reversable error by failing to find that each job individually existed in significant numbers in the national economy. (Doc. No. 8, at 17). In *Viverette*, the ALJ referenced the VE's testimony collectively and "apparently treated the three occupations … cumulatively… for she did not make any findings about how many jobs were available in the national economy for each of the occupations." *Viverette*, 13 F.4th at 1318. Here, however, the ALJ's decision included a chart which identified each representative occupation and the number of jobs nationally for each. (AR 42). The ALJ expressly made a finding as to those numbers by finding that the VE had reasonably accounted for any conflicts between the DOT and RFC in reaching those numbers and using them, in combination with factors such as the claimant's age, education, work experience, and RFC to conclude that Carpenter had other work available to him and so he was not disabled. *Id.*

Moreover, even if the Court were to find that the mail sorter and cashier II positions were unavailable to Carpenter, he still has 134,000 positions available to him. In *Viverette*, the ALJ's error meant that there were only 7,000 jobs available nationally. *Viverette*, 13 F.4th at 1318-19. "[C]ourts around the country have generally held that at least 10,000 positions in the national economy is a 'significant' number," and so, it is no surprise that the *Viverette* court found that the ALJ's finding was not based on substantial evidence. *See Marco R.M.*, 2022 WL 257840, at *8 (collecting cases). Here, Plaintiff would be left with 134,000 jobs in the national economy, a clear distinguishing fact.

At step five, the Commissioner's burden is met "[s]o long as the ALJ identifies at least one occupation existing in significant numbers in the national economy that the claimant can perform." *Marco R. M. v. Kijakazi*, No. 2:21-CV-38, 2022 WL 257840, at *8 (E.D. Va. Jan. 10, 2022), *report and recommendation adopted*, No. 2:21-CV-38, 2022 WL 256501 (E.D. Va. Jan. 26, 2022) (citing *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 859 (N.D.W. Va. 2009)). This holds true even if all but one of the jobs identified by the ALJ are inconsistent with the RFC's limitations. *See Kelly G. v. Kijakazi*, No. 2:20-cv-563, 2021 WL 8824857, at *9-10 (E.D. Va. Dec. 20, 2021) (stating that even if five of the six jobs identified by the ALJ were inconsistent with the RFC's limitation to simple instructions that the identification of one suitable job would be harmless error). Therefore, the ALJ met his step five burden, and his decision is supported by substantial evidence.

Lastly, assuming *arguendo* that the Court were to find that the ALJ failed to resolve a conflict or that the ALJ failed to find that each job identified by the VE existed in significant numbers in the national economy, any error would be harmless. "Remand is not required where, despite [the] ALJ's error, [the] ALJ would have reached the same result notwithstanding his error." *Farnsworth*, 604 F. Supp. 2d at 837 (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)). In this case, "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies" even if he had excluded the mailroom clerk and cashier II positions. *Id.* In his decision, the ALJ relied on the testimony of the VE to state that there were approximately 134,00 price marker jobs in the national economy, well above the standard 10,000 position courts generally use as a benchmark. *See Marco R.M.*, 2022 WL 257840, at *8 (collecting cases). Moreover, Carpenter's counsel did not identify any inconsistencies between the VE's testimony and the DOT at his hearing, (AR

85-86), meaning both that the ALJ had no reason to address the alleged conflict more directly and that Carpenter may have waived the argument entirely. Further, Carpenter does not claim that he cannot work any of the proffered jobs, including price marker, which requires only Level 2 Reasoning. (*See* Doc. No. 8). Therefore, any alleged failure to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and Carpenter's RFC would be harmless.

2. **Whether the ALJ Applied the Correct Legal Standard**

Carpenter next argues that the ALJ applied the incorrect legal standard. Specifically, he claims that the ALJ used the substantial evidence standard rather than the preponderance of the evidence standard. (Doc. No. 8, at 18). This, Carpenter argues, allowed the ALJ to support his decision with less evidence than he otherwise would have needed, which necessitates remand.

An ALJ "must base the[ir] decision on the preponderance of the evidence offered at the hearing or otherwise included in the record" 20 C.F.R. § 404.953(a). A preponderance of the evidence means that the evidence "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Ullah v. Garland*, 72 F. 4th 597, 603 (4th Cir. 2023) (*quoting Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011)). Substantial evidence, a less demanding standard, requires "more than a mere scintilla" or evidence, but also "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154.

The Court finds that there is no basis to infer that the ALJ did anything other than follow the applicable regulations and apply the preponderance of the evidence standard. 20 C.F.R. § 404.953(a) provides that the "administrative law judge must base the *decision* on the preponderance of the evidence offered at the hearing or otherwise included in the record."

(emphasis supplied). At the hearing, the ALJ said that he would review Carpenter's case "based on the Social Security Act and Regulations," which includes the applicable legal standard. (AR 54-55).

In support of his position, Carpenter argues that the ALJ used the phrase "substantial evidence" twice in his decision. Yet, the Court cannot conclude that the mere use of those words establishes that the ALJ ignored the appropriate standard. First, after reviewing the medical evidence related to Carpenter's seizures, the ALJ noted that "the substantial evidence is consistent with an individual capable of performing light exertional work tasks that involve understanding, remembering, sustaining concentration, and carrying out only simple instructions and tasks, making simple work-related decisions, and do not require driving as park of work duties." (AR 37-38). Second, following discussion of the medical evidence regarding Carpenter's pain symptoms, the ALJ stated that "the substantial evidence is consistent with an individual who remains capable of performing light exertional work tasks that do not require climbing of ladders, ropes, or scaffolds, and require only frequent handling, fingering, feeling, and grasping with the bilateral hands." (AR 38).

Unlike the ALJs in the cases cited by Carpenter, the ALJ here did not state that there was substantial evidence to support his overall finding that the claimant was not disabled. *See Yzaguirre v. Barnhart*, 58 F. App'x 460, 463 (10th Cir. 2003); *Young v. Apfel*, 198 F.3d 260 (10th Cir. 1999). Instead, the ALJ in this case merely noted, in the middle of his decision, after reviewing Carpenter's medical history, that the "substantial evidence is consistent with an individual" with Carpenter's limitations. (AR 37-38). This reference, "unaccompanied by any citations to authority—strongly suggests that [the ALJ] employed the words according to their ordinary meaning rather than as a term of art." *Thurman v. Colvin*, No. 1:12-CV-00516-SEB,

2013 WL 4671551, at *2 (S.D. Ind. Aug. 29, 2013). Therefore, the Court finds that the ALJ did not apply an incorrect legal standard.

In sum, the Court concludes that the ALJ correctly resolved any conflict between the VE's testimony and the DOT and further applied correct legal standards to Carpenter's appeal.

### IV. ORDER

It is therefore ordered that the Commissioner's decision is **AFFIRMED** and the Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 15, 2023

Kenneth D. Bell
United States District Judge